**EXHIBIT G**



LEXSEE 326 F. SUPP. 2D 556

**SONY MUSIC ENTERTAINMENT INC. et al., Plaintiffs - against - DOES 1 - 40, Defendants.**

**04 Civ. 473 (DC)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*326 F. Supp. 2d 556*; *2004 U.S. Dist. LEXIS 14122*; *71 U.S.P.Q.2D (BNA) 1661*; *Copy. L. Rep. (CCH) P28,842*

**July 26, 2004, Decided
July 27, 2004, Filed**

**DISPOSITION:** [**1] Defendants' motions to quash subpoena denied. Amici's request that plaintiffs be ordered to return subpoenaed information denied.

**COUNSEL:** For Plaintiffs: J. Christopher Jensen, Esq., Jason David Sanders, Esq., COWAN, LIEBOWITZ & LATMAN, P.C., New York, NY.

For Plaintiffs: Thomas J. Perrelli, Esq., JENNER & BLOCK LLP, Washington, D.C.

For Doe, Defendant: LOUIS P. PITTOCCO, ESQ., Greenwich, CT.

Amici Curiae: Wendy Seltzer, Esq., Cindy A. Cohn, Esq., ELECTRONIC FRONTIER FOUNDATION, San Francisco, CA.

Amici Curiae: Paul Alan Levy, Esq., Charlotte Garden, Esq., PUBLIC CITIZEN, Washington, D.C.

Amici Curiae: Christopher A. Hansen, Esq., Aden J. Fine, Esq., AMERICAN CIVIL LIBERTIES UNION, New York, NY.

**JUDGES:** DENNY CHIN, United States District Judge.

**OPINION BY:** DENNY CHIN

**OPINION**

[*558] **CHIN, D.J.**

In this case, plaintiffs -- seventeen record companies -- sued forty unidentified "Doe" defendants for copyright infringement, alleging that defendants illegally downloaded and distributed plaintiffs' copyrighted or exclusively licensed songs from the Internet, using a "peer to peer" file copying [**2] network. Plaintiffs served a subpoena on non-party Internet service provider Cablevision Systems Corporation ("Cablevision"), seeking to obtain defendants' identities. Four defendants move to quash the subpoena.

The motions present two *First Amendment* issues. First, is a person who uses the Internet to download or distribute copyrighted music without permission engaging in the exercise of speech? Second, if so, is such a person's identity protected from disclosure by the *First Amendment*? I conclude that a person who uses the Internet to download or distribute copyrighted music without permission is engaging in the exercise of speech, albeit to a limited extent only. I conclude further that such a person's identity is not protected from disclosure

326 F. Supp. 2d 556, *558; 2004 U.S. Dist. LEXIS 14122, **2;
71 U.S.P.Q.2D (BNA) 1661; Copy. L. Rep. (CCH) P28,842

by the *First Amendment*. Accordingly, the motions to quash are denied.

**STATEMENT OF THE CASE**

**I.** *Facts*

Plaintiffs own the copyrights and exclusive licenses to the various sound recordings at issue in this case. (Compl. P 23). Plaintiffs allege that each of the forty Doe defendants, without plaintiffs' permission, used "Fast Track," an online media distribution system -- or "peer to peer" ("P2P") file copying network -- [**3] to download, distribute to the public, or make available for distribution "hundreds or thousands" of copyrighted sound recordings. (*Id.* P 25, Exh. A; Whitehead Decl. I P 6; Whitehead Decl. II P 4). [1] In their most popular form, P2P networks are computer systems or processes that enable Internet users to "(1) make files (including audio recordings) stored on a computer available for copying by other users; (2) search for files stored on other users' computers; and (3) transfer exact copies of files from one computer to another via the Internet." (Whitehead Decl. I P 7).

> 1  "Whitehead Decl. I" refers to the Declaration of Jonathan Whitehead in Support of Plaintiffs' Ex Parte Application to Take Immediate Discovery, dated January 21, 2004. Whitehead is the vice president and counsel for Online Copyright Protection for the Recording Industry Association of America, Inc. (Whitehead Decl. I. P 1).
>
> "Whitehead Decl. II" refers to the Second Declaration of Jonathan Whitehead, dated April 21, 2004 and submitted in support of Plaintiffs' Opposition to Jane Doe's Motion to Quash and Response to the Memorandum of Amici Curiae Public Citizen et al.

[**4] Plaintiffs were able to identify Cablevision as the Internet service provider ("ISP") to which defendants subscribed, using a publicly available database to trace the Internet Protocol ("IP") address for [*559] each defendant. (*Id.* PP 12, 16). ISPs own or are assigned certain blocks or ranges of IP addresses. (*Id.* P 14 n.1). An ISP assigns a particular IP address in its block or range to a subscriber when that subscriber goes "online." (*Id.*). An ISP can identify the computer from which the alleged infringement occurred and the name and address of the subscriber controlling the computer when it is provided with a user's IP address and the date and time of the allegedly infringing activity. (*Id.* P 14).

As a condition of providing its Internet service, Cablevision requires its subscribers to agree to its "Terms of Service" under which "transmission or distribution of any material in violation of any applicable law or regulation is prohibited. This includes, without limitation, material protected by copyright, trademark, trade secret or other intellectual property right used without proper authorization." (Cablevision Mem. 2 (citing http://www.optimumonline.com/index.jhtml ? [**5] pageType=aup)). The Terms of Service also state that "Cablevision has the right ... to disclose any information as necessary to satisfy any law, regulation or other governmental request." (*Id.* (citing http://www.optimumonline.com/index.jhtml ;jsessionid=IJGQQMJ2FS4OSCQLASDSFEQKBMCIMI5G? pageType=terms)).

**II.** *Prior Proceedings*

On January 26, 2004, this Court issued an order granting plaintiffs' ex parte application to serve a subpoena upon non-party Cablevision to obtain the identity of each Doe defendant by requesting the name, address, telephone number, email address, and Media Access Control address for each defendant. In support of their application for expedited discovery, plaintiffs argued, *inter alia,* that good cause existed because ISPs typically retain user activity logs for only a limited period of time before erasing data. (Pl. Mem. 6; Whitehead Decl. I P 22).

On February 2, 2004, amici curiae Electronic Frontier Foundation, Public Citizen, and the American Civil Liberties Union ("amici") submitted a letter to the Court objecting to plaintiffs' ex parte application for expedited discovery. The objection came after the Court had already issued its January 26, 2004 Order. [**6] In their letter, amici argued that the requested discovery violated the *First Amendment*, the case improperly joined all defendants, and personal jurisdiction was lacking.

On February 3, 2004, the Court ordered that its January 26, 2004 Order remain in effect. The February 3, 2004 Order further provided that, if Cablevision were served with a subpoena from plaintiffs, Cablevision was to give its subscribers notice within five business days, and Cablevision or the Doe defendants could move to quash the subpoena before the subpoena's return date.

Case: 1:10-cv-06256 Document #: 46-7 Filed: 04/08/11 Page 4 of 10 PageID #:306

Page 3

326 F. Supp. 2d 556, *559; 2004 U.S. Dist. LEXIS 14122, **6;
71 U.S.P.Q.2D (BNA) 1661; Copy. L. Rep. (CCH) P28,842

(2/3/04 Order). Cablevision was instructed to preserve the subpoenaed information in question pending resolution of any timely filed motions to quash. (*Id.*). The Court further ordered that issues raised by amici would be considered by the Court if and when any subscriber, defendant, or Cablevision moved to quash and the parties and non-party witnesses had been given an opportunity to be heard. (*Id.*).

On February 3, 2004, Cablevision received by fax a subpoena issued by plaintiffs' attorneys. (Kiefer Decl. P 2). The subpoena identified forty IP addresses and demanded that Cablevision produce, by February 23, 2004, information identifying [**7] the Cablevision subscribers who had used the indicated IP addresses at the times specified in the subpoena. (*Id.*).

[*560] Cablevision sent notice to all affected subscribers. (*Id.* P 4). Cablevision's letter stated,

> Unless we hear from you, or your attorney, in writing by February 20, 2004 that you have filed the appropriate papers with the U.S. District Court for the Southern District of New York to have the subpoena set aside, we will disclose your subscriber information to the plaintiffs, as required by the enclosed subpoena.

(2/12/04 Notice Letter from Cablevision to Subscriber; *see also* Kiefer Decl. P 4).

By letter dated February 19, 2004, attorney Kenneth J. Hanko advised the Court that he represented one of the Doe defendants. (2/19/04 Hanko Letter to Court). Hanko stated that his client joined the arguments set forth in the February 2, 2004 letter to the Court from the Electronic Frontier Foundation, Public Citizen, and the American Civil Liberties Union. (*Id.*). Hanko's letter also argued that plaintiffs "have not made a sufficient factual showing to warrant discovery concerning the unnamed defendants." (*Id.*).

On February 20, 2004, Cablevision [**8] received from Hanko a letter stating that he represented one of Cablevision's subscribers and that he "would expect that Cablevision will make every effort to quash the subpoena or otherwise limit the scope of the requested discovery so ... as not to infringe on [his] client's privacy rights." (Kiefer Decl. P 5). According to Cablevision attorney Alfred G. Kiefer, Jr., he called Hanko on February 20, 2004 and informed Hanko that because he had not filed a motion to quash the subpoena, Cablevision would have to comply with the subpoena. (*Id.* P 6).

On February 23, 2004, Cablevision complied with plaintiffs' subpoena and provided relevant identifying information about thirty-six defendants to plaintiffs. (*Id.* P 7; *see also* 3/2/04 Plaintiffs' Letter to Court; 3/12/04 Plaintiffs' Letter to Court). [2] According to Kiefer, Cablevision did so because Hanko did not indicate to Cablevision that he had filed or intended to file a motion to quash the subpoena and because Cablevision did not construe Hanko's letter to the Court as a motion to quash. (Kiefer Decl. P 7). According to Hanko, his transmittal of the copy of his February 19, 2004 letter to the Court, by which Hanko's client [**9] joined the arguments set forth by amici in their February 2, 2004 letter to the Court, communicated to Cablevision his client's objection to the subpoena. (3/12/04 Letter from Hanko to the Court).

> [2] According to a March 12, 2004 letter from plaintiffs' counsel to the Court, Cablevision could not identify four of the Doe defendants. (3/12/04 Plaintiffs' Letter to Court).

This Court issued an Order on February 27, 2004, in which it ruled that Hanko's February 19, 2004 letter to the Court would be construed as a motion to quash the subpoena. The Court set a briefing schedule, with a March 19, 2004 deadline for motions to quash from other Doe defendants and amici curiae papers.

The Court subsequently received three letter requests to quash the subpoena from or on behalf of other Doe defendants. (Letters from Doe defendants to Court dated 3/12/04, 3/15/04, and 3/18/04). Two Doe defendants also sought extensions of time to submit motions to quash. (Letters from Doe defendants to Court dated 3/16/04 and 3/18/04).

[**10] On March 25, 2004, the Court issued an Order extending the deadline for filing and service of motions to quash to April 8, 2004.

[*561] By letters dated April 7, 2004 and April 30, 2004, defendant Jane Doe ("Jane Doe") stated that she was using her former counsel Kenneth J. Hanko's February 19, 2004 letter to the Court as her formal motion to quash, based on lack of a sufficient factual showing permitting discovery, her *First Amendment* right

Case: 1:10-cv-06256 Document #: 46-7 Filed: 04/08/11 Page 5 of 10 PageID #:307

Page 4

326 F. Supp. 2d 556, *561; 2004 U.S. Dist. LEXIS 14122, **10;
71 U.S.P.Q.2D (BNA) 1661; Copy. L. Rep. (CCH) P28,842

to anonymity, and lack of personal jurisdiction. (Letters from Jane Doe, c/o Cindy Cohn, Esq., Electronic Frontier Foundation, to Court, dated 4/7/04 and 4/30/04).

In the meantime, from March 11, 2004 to April 13, 2004, plaintiffs voluntarily dismissed this action as to Does 5, 9, 10, 12, 20, 34, and 40, pursuant to *Fed. R. Civ. P. 41(a)*. Thirty-three of the original forty Doe defendants remain.

## DISCUSSION

### I. *Mootness*

Plaintiffs contend that the motions to quash the subpoena are moot in light of Cablevision's compliance with the subpoena on February 23, 2004. (Pl. Opp. 6-7; *see also* Plaintiffs' Letters to Court dated 3/2/04 and 3/12/04). By the time this Court issued its February 27, 2004 Order [**11] setting a March 19, 2004 deadline for additional motions to quash the subpoena and amici curiae papers, Cablevision had already provided the subpoenaed information to plaintiffs.

Amici argue that the motions to quash are not moot because the Court is empowered to compel the suppression or return of evidence improperly obtained. (Am. Cur. Mem. 3). Amici contend that the disclosure of the Doe defendants' identities violated the Court's February 3, 2004 Order directing Cablevision to preserve subpoenaed information pending resolution of any motions to quash filed prior to the subpoena's return date. (*Id.* at 16). Accordingly, amici seek an order from the Court directing that the Doe defendants' identities not be used for any purpose. (*Id.*).

Plaintiffs' mootness argument is rejected. First, at least one "motion" to quash was timely lodged, as Hanko's letter of February 19, 2004 was the equivalent of a motion to quash, and it was submitted prior to the return date of the subpoena. Second, even though Cablevision has already produced the information, plaintiffs can be ordered to return the information and prohibited from using it. Accordingly, the issues are not moot, and I consider [**12] the issues on the merits.

### II. *The Merits*

Pursuant to *Fed. R. Civ. P. 45(c)(3)(A)(iii)*, a subpoena shall be quashed if it "requires disclosure of privileged or other protected matter and no exception or waiver applies."

Jane Doe moves to quash the subpoena based on (1) the subpoena's violation of her *First Amendment* right to engage in anonymous speech; (2) lack of personal jurisdiction; (3) improper joinder of the Doe defendants; and (4) lack of a sufficient factual showing to permit discovery. Jane Doe and amici argue, accordingly, that the Court should order plaintiffs to return the disclosed information to Cablevision. [3]

> [3] Of the four moving defendants, only Jane Doe states substantive grounds for her motion to quash. Accordingly, I address only the grounds she and amici raise. In her February 19, 2004 letter, Jane Doe joined the arguments set forth in amici's February 2, 2004 letter, which included its arguments that the *First Amendment* bars disclosure of the Doe defendants' identities, lack of personal jurisdiction, improper joinder, and lack of a sufficient factual showing permitting discovery. Amici make the same arguments in their Memorandum in Support of Motions to Quash. By letters dated April 7, 2004 and April 30, 2004, Jane Doe reiterated her objections to disclosure of her identity based on the *First Amendment*, lack of a sufficient factual showing permitting discovery, and lack of personal jurisdiction. (Letters from Jane Doe, c/o Cindy Cohn, Esq., Electronic Frontier Foundation, to Court, dated 4/7/04 and 4/30/04).

[**13] [*562] Plaintiffs contest these arguments and maintain that they have "good cause" for expedited discovery.

### A. *The First Amendment*

Defendants' motions to quash raise two *First Amendment* issues: (1) whether a person who uses the Internet to download or distribute copyrighted music without permission is engaging in the exercise of speech; and (2) if so, whether such a person's identity is protected from disclosure by the *First Amendment*.

### 1. *Applicable Law*

#### a. *First Protection for Anonymous Internet Speech*

The Supreme Court has recognized that the *First Amendment* protects anonymous speech. *Buckley v.*

Case: 1:10-cv-06256 Document #: 46-7 Filed: 04/08/11 Page 6 of 10 PageID #:308

Page 5

326 F. Supp. 2d 556, *562; 2004 U.S. Dist. LEXIS 14122, **13;
71 U.S.P.Q.2D (BNA) 1661; Copy. L. Rep. (CCH) P28,842

*American Constitutional Law Found., 525 U.S. 182, 200, 142 L. Ed. 2d 599, 119 S. Ct. 636 (1999)* (invalidating, on *First Amendment* grounds, state statute requiring initiative petitioners to wear identification badges). As the Court has held, "anonymity is a shield from the tyranny of the majority." *McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 357, 131 L. Ed. 2d 426, 115 S. Ct. 1511 (1995)*. In *McIntyre,* the Court overturned an Ohio law that prohibited the dissemination of campaign literature that did not list the name and address of the person issuing the literature, holding that "under [**14] our Constitution, anonymous pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of advocacy and of dissent." *Id.; see also Talley v. California, 362 U.S. 60, 65, 4 L. Ed. 2d 559, 80 S. Ct. 536 (1960)* (invalidating California statute prohibiting distribution of handbills without name and address of preparer).

It is well-settled that the *First Amendment's* protection extends to the Internet. *Reno v. ACLU, 521 U.S. 844, 870, 138 L. Ed. 2d 874, 117 S. Ct. 2329 (1997)*; *In re Verizon Internet Servs., Inc., 257 F. Supp. 2d 244, 259 (D. D.C. 2003), rev'd on other grounds, Recording Indus. Ass'n of America, Inc. v. Verizon Internet Servs., Inc., 359 U.S. App. D.C. 85, 351 F.3d 1229 (D.C. Cir. 2003)*; *Columbia Ins. Co. v. Seescandy.Com, 185 F.R.D. 573, 578 (N.D. Cal. 1999)*; *ACLU v. Johnson, 4 F. Supp. 2d 1029, 1033 (D. N.M. 1998), aff'd, 194 F.3d 1149 (10th Cir. 1999)*. Courts have recognized the Internet as a valuable forum for robust exchange and debate. *See Reno v. ACLU, 521 U.S. at 870* ("Through the use of chat rooms, any person with a phone line can become a town crier with a voice that resonates farther than it [**15] could from any soapbox."); *Doe v. 2TheMart.Com, Inc., 140 F. Supp. 2d 1088, 1092 (W.D. Wash. 2001)*; *Seescandy.Com, 185 F.R.D. at 578*. The Internet is a particularly effective forum for the dissemination of anonymous speech. *See, e.g., 2TheMart.Com, 140 F. Supp. 2d at 1092, 1097* ("Internet anonymity facilitates the rich, diverse, and far ranging exchange of ideas ... [;] the constitutional rights of Internet users, including the *First Amendment* right to speak anonymously, must be carefully safeguarded."); *United States v. Perez, 247 F. Supp. 2d 459, 461 (S.D.N.Y. 2003)* (noting the Internet's "vast and largely anonymous distribution and communications network").

Anonymous speech, like speech from identifiable sources, does not have absolute protection. The *First Amendment*, [*563] for example, does not protect copyright infringement, and the Supreme Court, accordingly, has rejected *First Amendment* challenges to copyright infringement actions. *See, e.g., Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 555-56, 569, 85 L. Ed. 2d 588, 105 S. Ct. 2218 (1985)*; *Universal City Studios, Inc. v. Reimerdes, 82 F. Supp. 2d 211, 220 (S.D.N.Y. 2000)* [**16] (the "Supreme Court ... has made it unmistakably clear that the *First Amendment* does not shield copyright infringement"). Parties may not use the *First Amendment* to encroach upon the intellectual property rights of others. *See In re Capital Cities/ABC, Inc., 918 F.2d 140, 143 (11th Cir. 1990)*.

**b.** *First Amendment Implications of Civil Subpoena Power*

Against the backdrop of *First Amendment* protection for anonymous speech, courts have held that civil subpoenas seeking information regarding anonymous individuals raise *First Amendment* concerns. For example, in *NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 462, 2 L. Ed. 2d 1488, 78 S. Ct. 1163 (1958)*, the Supreme Court held that a discovery order requiring the NAACP to disclose its membership list interfered with the *First Amendment's* freedom of assembly. Similarly, in *NLRB v. Midland Daily News, 151 F.3d 472, 475 (6th Cir. 1998)*, the Sixth Circuit declined on *First Amendment* grounds to enforce a subpoena duces tecum issued by the National Labor Relations Board seeking to require a newspaper publisher to disclose the identity of an anonymous advertiser. *See also Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League, 89 F.R.D. 489, 494-95 (C.D. Cal. 1981)* [**17] (granting motion to quash civil subpoena seeking disclosure of confidential journalistic sources); *but see Lee v. U.S. Dep't of Justice, 287 F. Supp. 2d 15, 24-25 (D. D.C. 2003)* (denying motion to quash subpoena duces tecum seeking journalists' confidential news sources in light of plaintiff's need to obtain information to pursue *Privacy Act* action against government).

Courts have addressed, on a number of recent occasions, motions to quash subpoenas seeking identifying subscriber information from ISPs. Some courts have required disclosure. For example, in a case closely resembling this one, the district court in *Verizon, 257 F. Supp. 2d at 267-68, 275, rev'd on other grounds, Recording Indus. Ass'n of America, Inc. v. Verizon Internet Servs., Inc., 359 U.S. App. D.C. 85, 351 F.3d*

Case: 1:10-cv-06256 Document #: 46-7 Filed: 04/08/11 Page 7 of 10 PageID #:309

Page 6

326 F. Supp. 2d 556, *563; 2004 U.S. Dist. LEXIS 14122, **17;
71 U.S.P.Q.2D (BNA) 1661; Copy. L. Rep. (CCH) P28,842

*1229 (D.C. Cir. 2003)*, denied an ISP's motion to quash a subpoena served pursuant to the *Digital Millennium Copyright Act* ("DMCA") seeking subscriber information about P2P users who had allegedly engaged in copyright infringement. [4] Similarly, in *In re Subpoena Duces Tecum to America Online, Inc., 52 Va. Cir. 26, 2000 Va. Cir. LEXIS 220, No. 40570, 2000 WL 1210372, at *1 (Va. Cir. Ct. Jan. 31, 2000)*, [**18] *rev'd on other grounds, America Online, Inc. v. Anonymous Publicly Traded Co., 261 Va. 350, 542 S.E.2d 377 (Va. 2001)*, the court denied a motion to quash a subpoena seeking the identity of certain Doe defendants who had allegedly made defamatory statements and disclosed confidential insider information online. Other courts, in different circumstances, have quashed subpoenas seeking information identifying ISP subscribers. *See, e.g., 2TheMart.Com, 140 F. Supp. 2d at 1090, 1097-98* (granting motion to quash subpoena seeking identities of anonymous non-party ISP subscribers in shareholder derivative suit); *Anderson v. Hale, 202 F.R.D. 548, No. 00 Civ. 2021, 2001* [*564] *WL 503045, at *9 (N.D. Ill. 2001)* (granting motion to quash subpoena seeking identifying information from ISP about subscribers affiliated with organization); *Dendrite Int'l. Inc. v. Doe, 342 N.J. Super. 134, 775 A.2d 756, 760, 772 (N.J. Super. Ct. App. Div. 2001)* (denying motion for expedited discovery to obtain identity of ISP subscriber due to failure to establish prima facie defamation claim).

> [4] The District of Columbia Circuit reversed, holding that § 512(h) of the DMCA authorized service of a subpoena only on "an ISP engaged in storing on its servers material that is infringing or the subject of infringing activity." *351 F.3d at 1233*.

[**19] **2.** *Application*

**a.** *Is Defendants' Alleged Conduct "Speech?"*

As a threshold matter, I address whether the use of P2P file copying networks to download, distribute, or make available for distribution copyrighted sound recordings, without permission, is an exercise of speech. I conclude that this conduct qualifies as speech, but only to a degree.

In contrast to many cases involving *First Amendment* rights on the Internet, a person who engages in P2P file sharing is not engaging in true expression. *See, e.g., Reno v. ACLU, 521 U.S. at 870* (participation in Internet chat rooms); *America Online, 261 Va. 350, 2000 WL 1210372, at *1 (same)*; *2TheMart.Com, 140 F. Supp. 2d at 1092 (Internet bulletin board)*; *Dendrite, 775 A.2d at 759-60 (same)*; *La Societe Metro Cash & Carry France v. Time Warner Cable, 2003 Conn. Super. LEXIS 3302, No. CV0301974OOS, 2003 WL 22962857, at *1 (Conn. Super. Ct. Dec. 2, 2003)* (email communications through Internet). Such an individual is not seeking to communicate a thought or convey an idea. Instead, the individual's real purpose is to obtain music for free.

Arguably, however, a file sharer is making a statement [**20] by downloading and making available to others copyrighted music without charge and without license to do so. Alternatively, the file sharer may be expressing himself or herself through the music selected and made available to others. Although this is not "political expression" entitled to the "broadest protection" of the *First Amendment*, *McIntyre, 514 U.S. at 346* (quoting *Buckley v. Valeo, 424 U.S. 1, 14, 46 L. Ed. 2d 659, 96 S. Ct. 612 (1976)*, [5] the file sharer's speech is still entitled to "some level of *First Amendment* protection." *Verizon, 257 F. Supp. 2d at 260*, *rev'd on other grounds, Recording Indus. Ass'n of America, Inc. v. Verizon Internet Servs., Inc., 359 U.S. App. D.C. 85, 351 F.3d 1229 (D.C. Cir. 2003)*.

> [5] *See McIntyre, 514 U.S. at 347* ("When a law burdens core political speech, we apply 'exacting scrutiny,' and we uphold the restriction only if it is narrowly tailored to serve an overriding state interest.").

I conclude, accordingly, that the use of P2P file copying [**21] networks to download, distribute, or make sound recordings available qualifies as speech entitled to *First Amendment* protection. That protection, however, is limited, and is subject to other considerations.

**b.** *Are Defendants' Identities Protected from Disclosure by the First Amendment*

I consider next whether the Doe defendants' identities are protected from disclosure by the *First Amendment*. For the reasons set forth below, I conclude that the *First Amendment* does not bar disclosure of the Doe defendants' identities.

Cases evaluating subpoenas seeking identifying information from ISPs regarding subscribers who are

Case: 1:10-cv-06256 Document #: 46-7 Filed: 04/08/11 Page 8 of 10 PageID #:310

Page 7

326 F. Supp. 2d 556, *564; 2004 U.S. Dist. LEXIS 14122, **21;
71 U.S.P.Q.2D (BNA) 1661; Copy. L. Rep. (CCH) P28,842

parties to litigation have considered a variety of factors to weigh the need for disclosure against *First Amendment* interests. These factors include: (1) a concrete showing of a prima facie claim of actionable harm, *see Seescandy.Com, 185 F.R.D. at 577, 579-81* [*565] (permitting plaintiff to request discovery, based on particular factors, to determine identities of defendants known only by Internet pseudonyms and domain name registration identities); *America Online, 261 Va. 350, 2000 WL 1210372, at *8, rev'd on other grounds, America Online, Inc. v. Anonymous Publicly Traded Co., 261 Va. 350, 542 S.E.2d 377 (Va. 2001)*; [**22] *Dendrite, 775 A.2d at 760*; (2) specificity of the discovery request, *Seescandy.Com, 185 F.R.D. at 578, 580*; *Dendrite, 775 A.2d at 760*; (3) the absence of alternative means to obtain the subpoenaed information, *see Seescandy.Com, 185 F.R.D. at 579*; (4) a central need for the subpoenaed information to advance the claim, *America Online, 261 Va. 350, 2000 WL 1210372, at *8*; *Dendrite, 775 A.2d at 760-61*; and (5) the party's expectation of privacy, *Verizon, 257 F. Supp. 2d at 260-61, 267-68, rev'd on other grounds, Recording Indus. Ass'n of America, Inc. v. Verizon Internet Servs., Inc., 359 U.S. App. D.C. 85, 351 F.3d 1229 (D.C. Cir. 2003)*. As set forth below, each of these factors supports disclosure of defendants' identities.

### i. *Prima Facie Claim of Copyright Infringement*

Plaintiffs have made a concrete showing of a prima facie claim of copyright infringement. A prima facie claim of copyright infringement consists of two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Arden v. Columbia Pictures Indus., Inc., 908 F. Supp. 1248, 1257 (S.D.N.Y. 1995)* [**23] (quoting *Feist Publications v. Rural Tel. Serv. Co., 499 U.S. 340, 361, 113 L. Ed. 2d 358, 111 S. Ct. 1282 (1991))*.

Plaintiffs have alleged ownership of the copyrights or exclusive rights of copyrighted sound recordings at issue in this case sufficiently to satisfy the first element of copyright infringement. (Compl. PP 23, 24) . [6] Plaintiffs have attached to the complaint a partial list of the sound recordings the rights to which defendants have allegedly infringed. (*Id.,* Exh. A). Each of the copyrighted recordings on the list is the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights to one of the record company plaintiffs. (*Id.* P 23). Plaintiffs also allege that among the exclusive rights granted to each plaintiff under the Copyright Act are the exclusive rights to reproduce and distribute to the public the copyrighted recordings. (*Id.* P 24). Defendants have failed to refute in any way plaintiffs' allegations of ownership.

> 6   Exclusive licensees can sue for copyright infringement. *See Random House, Inc. v. Rosetta Books LLC, 283 F.3d 490, 491 (2d Cir. 2002)*.

[**24] Plaintiffs have also adequately pled the Doe defendants' infringement of plaintiffs' licenses and copyrights, thus satisfying the second element in a copyright infringement claim. Plaintiffs allege that each defendant, without plaintiffs' consent, "used, and continues to use an online media distribution system to download, distribute to the public, and/or make available for distribution to others" certain of the copyrighted recordings in Exhibit A to the complaint. (*Id.* P 25).

Plaintiffs have submitted supporting evidence listing the copyrighted songs downloaded or distributed by defendants using P2P systems. (*Id.,* Exh. A; Whitehead Decl. I, Exhs. 1-3). The lists also specify the date and time at which defendants' allegedly infringing activity occurred and the IP address assigned to each defendant at the time. (Compl., Exh. A).

Moreover, the use of P2P systems to download and distribute copyrighted music has been held to constitute copyright infringement. *See A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1013-14 (9th* [*566] *Cir. 2001)* (holding that downloading and distribution of copyrighted music via P2P network Napster constituted copyright infringement); [**25] *In re Aimster Copyright Litigation, 334 F.3d 643, 653 (7th Cir. 2003)* (affirming grant of preliminary injunction against P2P network Aimster in absence of evidence that system was used to transfer non-copyrighted files), *cert. denied, Deep v. Recording Indus. Ass'n of America, Inc., 157 L. Ed. 2d 893, 124 S. Ct. 1069 (2004)*. Accordingly, plaintiffs have sufficiently pled copyright infringement to establish a prima facie claim.

### ii. *Specificity of the Discovery Request*

Plaintiffs' discovery request is also sufficiently specific to establish a reasonable likelihood that the discovery request would lead to identifying information that would make possible service upon particular defendants who could be sued in federal court. *See*

326 F. Supp. 2d 556, *566; 2004 U.S. Dist. LEXIS 14122, **25;
71 U.S.P.Q.2D (BNA) 1661; Copy. L. Rep. (CCH) P28,842

*Seescandy.Com, 185 F.R.D. at 578, 580*; *Dendrite, 775 A.2d at 760*. Plaintiffs seek identifying information about particular Cablevision subscribers, based on the specific times and dates when they downloaded specific copyrighted and licensed songs. (Compl., Exh. A.; Whitehead Decl. I, Exhs. 1-3). Such information will enable plaintiffs to serve process on defendants.

### Iii. *Absence of Alternative Means* [**26] *to Obtain Subpoenaed Information*

Plaintiffs have also established that they lack other means to obtain the subpoenaed information by specifying in their ex parte application for expedited discovery and papers in opposition to Jane Doe's motion to quash the steps they have taken to locate the Doe defendants. *See Seescandy.Com, 185 F.R.D. at 579*. These include using a publicly available database to trace the IP address for each defendant, based on the times of infringement. (Pl. Mem. 1-2; Pl. Opp. 2-4; Whitehead Decl. I PP 12, 16).

### iv. *Central Need for Subpoenaed Information*

Plaintiff have also demonstrated that the subpoenaed information is centrally needed for plaintiffs to advance their copyright infringement claims. *See America Online, 261 Va. 350, 2000 WL 1210372, at *8*; *Dendrite, 775 A.2d at 760-61*. Ascertaining the identities and residences of the Doe defendants is critical to plaintiffs' ability to pursue litigation, for without this information, plaintiffs will be unable to serve process.

### v. *Defendants' Expectation of Privacy*

Plaintiffs are also entitled to discovery in light of defendants' minimal expectation [**27] of privacy. *See Verizon, 257 F. Supp. 2d at 260-61, 267-68, rev'd on other grounds, Recording Indus. Ass'n of America, Inc. v. Verizon Internet Servs., Inc., 359 U.S. App. D.C. 85, 351 F.3d 1229 (D.C. Cir. 2003)*. Cablevision's Terms of Service, to which its subscribers -- including the Doe defendants -- must commit, specifically prohibit the "transmission or distribution of any material in violation of any applicable law or regulation .... This includes, without limitation, material protected by copyright, trademark, trade secret or other intellectual property right used without proper authorization." (Cablevision Mem. 2 (citing http://www.optimumonline.com/index.jhtml?pageType=aup)). Moreover, the Terms of Service state that "Cablevision has the right ? to disclose any information as necessary to satisfy any law, regulation or other governmental request." (Cablevision Mem. 2 (citing http://www.optimumonline.com/index.jhtml ; jsessionid=IJGQQMJ2FS4OSCQLASDSFEQKBMCIM I5G?pageType=terms)). Accordingly, defendants have little expectation of privacy in downloading and distributing copyrighted songs without permission. *See Verizon, 257 F. Supp. 2d at 260-61, 267-68,* [**28] *rev'd on other grounds, Recording Indus. Ass'n of America, Inc.* [*567] *v. Verizon Internet Servs., Inc., 359 U.S. App. D.C. 85, 351 F.3d 1229 (D.C. Cir. 2003)*. [7]

> 7   I note that the court in *Verizon* also based its decision to allow disclosure of ISP subscriber identities on the nature of P2P file sharing: "If an individual subscriber opens his computer to permit others, through peer-to-peer file-sharing, to download materials from that computer, it is hard to understand just what privacy expectation he or she has after essentially opening the computer to the world." *257 F. Supp. 2d at 267*.

In sum, defendants' *First Amendment* right to remain anonymous must give way to plaintiffs' right to use the judicial process to pursue what appear to be meritorious copyright infringement claims.

### B. *Personal Jurisdiction*

Jane Doe and amici ask the Court to quash the subpoena based on the absence of personal jurisdiction. [8] This argument is rejected as premature.

> 8   Plaintiffs contend that no defendant has argued lack of personal jurisdiction. (Pl. Opp. 14). In fact, the February 19, 2004 letter to the Court from attorney Kenneth J. Hanko states that Jane Doe joined the arguments set forth in amici's February 2, 2004 letter to the Court, including an objection to the subpoena based on lack of personal jurisdiction. Moreover, by letter dated April 30, 2004, Jane Doe explicitly contested personal jurisdiction.

[**29] First, this Court has the discretion to allow discovery to determine the basis for personal jurisdiction. *See Volkart Bros., Inc. v. M/V "Palm Trader", 130 F.R.D. 285, 290 (S.D.N.Y. 1990)* (citing cases).

Second, without the identifying information sought by plaintiffs in the Cablevision subpoena, it would be

Case: 1:10-cv-06256 Document #: 46-7 Filed: 04/08/11 Page 10 of 10 PageID #:312

Page 9

326 F. Supp. 2d 556, *567; 2004 U.S. Dist. LEXIS 14122, **29;
71 U.S.P.Q.2D (BNA) 1661; Copy. L. Rep. (CCH) P28,842

difficult to assess properly the existence of personal jurisdiction over the Doe defendants. This analysis requires an evaluation of the contacts between the various defendants and the forum state. *See LiButti v. United States, 178 F.3d 114, 122 (2d Cir. 1999)* (citing *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985))*; *Retail Software Servs., Inc. v. Lashlee, 854 F.2d 18, 23 (2d Cir. 1988)* (same). A holding at this stage that personal jurisdiction is lacking would be premature.

Amici argue, however, that personal jurisdiction is lacking because research techniques available to plaintiffs prior to this litigation show the likelihood that the majority of the Doe defendants are not New York residents. (Am. Cur. Mem. 11). A supporting declaration by Seth Schoen, staff technologist with amicus curiae Electronic Frontier [**30] Foundation, explains the process by which defendants' IP addresses can be matched up with specific geographic designations, using a publicly available database operated by the American Registry for Internet Numbers. (*See* Schoen Decl.). These geographic designations indicate the "likely" locations of the residences or other venues where defendants used their Internet-connected computers. (*Id.* PP 5-9). Amici maintain that as many as thirty-six of the forty Doe defendants are "likely" to be found outside of New York. (*Id.* P 16).

Plaintiffs, however, dispute the accuracy of the methods described in the Schoen Declaration. (Pl. Opp. 18 n.11; Whitehead Decl. II P 9). According to plaintiffs, the geographical designations fall "far short" of 100 percent accuracy and are "often extremely inaccurate." (Whitehead Decl. II P 9).

Assuming personal jurisdiction were proper to consider at this juncture, the techniques suggested by amici, at best, suggest the mere "likelihood" that a number of defendants are located outside of New York. This, however, does not resolve [*568] whether personal jurisdiction would be proper.

Accordingly, I decline to rule on personal jurisdiction at this time [**31] and deny Jane Doe's motion to quash based on lack of personal jurisdiction.

### C. *Joinder*

Jane Doe and amici further urge the Court to quash the subpoena based on improper joinder. Although they raise a fair issue as to whether all these claims against forty apparently unrelated individuals should be joined in one lawsuit, discussion of joinder is not germane to the motions to quash before the Court, as the remedy for improper joinder is severance, *see Fed. R. Civ. P. 21*, and not the quashing of the subpoena at issue here. Accordingly, as consideration of joinder is premature, I deny Jane Doe's motion to quash based on improper joinder.

### D. *Factual Showing for Expedited Discovery*

Jane Doe and amici also argue that plaintiffs have not made a "sufficient factual showing" to justify disclosure of defendants' personal information. (2/19/04 Letter from Hanko to Court; 4/7/04 Letter from Jane Doe to Court; Am. Cur. Mem. 1). Plaintiffs argue, however, that "good cause" justified the expedited discovery permitted by the Court upon plaintiffs' ex parte application. (Pl. Opp. 7-10).

Parties are essentially urging the Court to revisit [**32] its January 26, 2004 Order, by which I permitted plaintiffs to serve immediate discovery. I decline to do so and confine my inquiry, as set forth above, to the motions to quash the subpoena.

### CONCLUSION

For the reasons set forth above, defendants' motions to quash the subpoena are denied and the arguments raised by amici are rejected. Amici's request that plaintiffs be ordered to return the subpoenaed information to Cablevision and to refrain from using it is denied. Plaintiffs may file and serve an amended complaint by August 16, 2004.

SO ORDERED.

Dated: New York, New York

July 26, 2004

DENNY CHIN

United States District Judge