**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FUTURE BLUE, INC. | ) | |
| | ) | CASE NO.: 1:10-cv-06256 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge: Hon. James B. Zagel |
| | ) | Magistrate Judge: Hon. Jeffrey T. Gilbert |
| DOES 1 – 300 | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF ELECTRONIC FRONTIER FOUNDATION FOR LEAVE TO SUBMIT RELATED AUTHORITY

Judge Posner noted in *Ryan*: "The vast majority of *amicus curiae* briefs are filed by allies of litigants and duplicate the arguments made in the litigants' briefs, in effect merely extending the length of the litigant's brief. Such *amicus* briefs should not be allowed." *Ryan v. Commodity Futures Trading Com'n*, 125 F.3d 1062, 1063 (7th Cir. 1997). Judge Posner went as far as to call these briefs "an abuse" because "the term '*amicus curiae*' means friend of the court, not friend of a party." *Id.* Attorney Charles Mudd currently represents multiple putative defendants in this very case. He now attempts to submit arguments under the air of impartiality afforded to an *amicus*. This Court should reject his attempt. First, none of the Seventh Circuit's traditional grounds for allowing an *amicus* filing are present here. Second, neither Mudd nor the EFF are friends of this Court.

The EFF's submission is tantamount to an attempt to usurp the defendants' litigation prerogative. If a defendant wishes to be excluded from this case, he or she is free to move the Court for such relief at an appropriate time. To date, none of Mudd's clients have attempted to do so. This may be because the benefits of a joint defense outweigh any costs. Mudd should not

advance arguments on behalf of the EFF that could harm his clients. This Court should not allow an advocate to appear as an *amicus*.

## LEGAL STANDARD

Whether to allow the filing of an *amicus curiae* brief is a matter of "judicial grace." *National Organization for Women, Inc. v. Scheidler*, 223 F.3d 615, 616 (7th Cir. 2000). At the trial level where issues of fact predominate, *amicus* briefs are generally inappropriate. *Leigh v. Engle*, 535 F. Supp. 418, 422 (N.D. Ill. 1982) (emphasizing that intervention in this manner in a trial court has never been favored in Anglo-American law and that "a district court, a forum whose principal function is resolving issues of fact, should go slow in accepting an *amicus* brief unless it has the joint consent of the parties.").

The well-settled rule in this Circuit is to not grant rote permission to file an *amicus curiae* brief. *Voices for Choices v. Illinois Bell Telephone Co.*, 339 F.3d 542, 544 (7th Cir. 2003); *Scheidler*, 223 F.3d at 617; *Ryan*, 125 F.3d 1062 at 64. The Seventh Circuit held that it is appropriate to grant permission to file an *amicus* brief only when: (1) a party is not adequately represented; or (2) when the would-be *amicus* has a direct interest in another case, and the case in which he seeks permission to file an *amicus curiae* brief may, by operation of *stare decisis* or *res judicata*, materially affect that interest; or (3) when the *amicus* has a unique perspective, or information, that can assist the court beyond what the parties are able to do. *Scheidler*, 223 F.3d at 617.

District courts within the Seventh Circuit follow the same standard for evaluating "friend of the court" submissions and will deny a motion for leave to file a brief as *amicus curiae* when the circumstances enumerated above are not present. *United Stationers, Inc. v. United States*, 982 F. Supp. 1279, 1288 n.7 (N.D. Ill. 1997); *Leigh*, 535 F. Supp. at 422; *Jones Day v. Blockshopper LLC*, No. 08 CV 4572, 2008 WL 4925644, at *6 (N.D. Ill. Nov. 13, 2008)

(denying Electronic Frontier Foundation leave to file an *amicus* brief on First Amendment issues).

Further, courts in this circuit still hold the *amicus* to the traditional standard: an *amicus curiae* is an impartial individual who suggests the interpretation and status of the law, given information concerning it, and whose function is to advise in order that justice may be done, rather than to advocate a point of view so that a cause may be won by one party or another. *Ryan*, 125 F.3d at 1063. *Leigh*, 535 F. Supp. at 422; *see also United States v. Andrews*, No. 89 CR 908, 1993 WL 18974, at *1 (N.D. Ill. Jan. 28, 1993) (denying motion to file a *amicus* brief where would-be *amicus* failed to "demonstrate[] that he could serve as an objective, neutral, dispassionate 'friend of the court'"); *Tiara Corp. v. Ullenberg Co.*, No. 87 C 405, 1987 WL 16612 (N.D. Ill. Sept. 1, 1987 (denying motion to appear as *amicus curiae* where *amicus* sought to play a partisan role); *accord Village of Elm Grove v. Py*, 724 F.Supp. 612, 613 (E.D. Wis. 1989) (denying motion to file an *amicus curiae* brief to an organization that had "its own particular interests in the outcome of this litigation" and finding that "its proposed contribution is unnecessary at this juncture").

## ARGUMENT

The Court should follow well-established precedent in this Circuit and deny the EFF's motion for leave to file an *amicus* brief because the circumstances under which it would be appropriate to make an *amicus* submission are not present here.[1] The criterion for deciding whether to permit the filing of an *amicus* brief is "whether the brief will assist the judges by presenting ideas, arguments, theories, insights, facts, or data that are not to be found in the

---

[1] Local Rule 5.6 prohibits non-parties from filing documents with the Court absent leave. Here, the EFF submitted substantive arguments in its motion for leave to file before receiving the Court's permission. Such tactics are inconsistent with the EFF's purported interest in "procedural fairness and due process."

parties' briefs." *Voices for Choices*, 339 F.3d at 545. The criterion is more likely to be satisfied in a case in which a party is inadequately represented; or in which the would-be *amicus* has a direct interest in another case that may be materially affected by a decision in this case; or in which the *amicus* has a unique perspective or specific information that can assist the court beyond what the parties can provide. *Id.* None of these circumstances are present here: the parties are adequately represented, EFF has no direct interest in another case that would be affected by a decision in this one, and it does not have a unique perspective to offer this Court.

**A.     The Parties are Adequately Represented by Competent Counsel**

One of the grounds articulated by the Seventh Circuit on which an *amicus* brief submission is proper is if the party is not adequately represented or not represented at all.[2] *Scheidler*, 223 F.3d at 617. Here, EFF attorney Charles Mudd can attest to the adequacy of counsel as he currently represents multiple putative defendants in this very case. Indeed, Mudd has had every opportunity to present the EFF's proposed arguments to the Court on behalf of his clients. But he has not done so. Perhaps this is because Mudd, like multiple judges around the country, recognizes that putative defendants receive significant benefits from being joined with others in cases such as this. The first grounds for filing *amicus curiae* brief are not present in this case.

**B.     The EFF Has No Direct Interest in Another Case That May be Materially Affected by a Decision in This Case**

A second ground on which it would be appropriate to file an *amicus* brief is if the would-be *amicus* has a direct interest in another case, and the case in which he seeks permission to file

---

[2] In its brief, the EFF intimates that the Court might appoint it as attorney *ad litem* for the Doe Defendants. The EFF fails to discuss the legal standard applicable to such appointments: Fed. R. Civ. P. 17. Under Rule 17, such appointments are appropriate only to protect minor or incompetent parties. Nor does the EFF discuss why it would appropriate for the Court to force currently represented parties to replace their existing counsel with Mudd.

an *amicus curiae* brief may, by operation of *stare decisis* or *res judicata*, materially affect that interest. *Scheidler*, 223 F.3d at 617.

One example of where a court granted a motion for leave to file as an *amicus* on these grounds comes from *Chamberlain Group, Inc. v. Interlogix, Inc.*, No. 01 C 6157, 2004 WL 1197258 (N.D. Ill. 2004). In *Chamberlain*, a non-party was allowed to file an *amicus* brief in order to oppose vacating the order construing the validity of a patent because the non-party was also litigating the validity of the same patent against the plaintiff in a declaratory judgment action in another federal district court. *Id.* at *1. The Court concluded that would-be *amicus curiae* was a directly interested party that may have been materially affected by the court's decision under the doctrine of collateral estoppel. *Id.*

Unlike the *amicus* in *Chamberlain*, however, the EFF has no direct interest in another case that would be affected by the Court's decision in this one. The EFF is "a non-profit, member-supported digital civil liberties organization." It represents "the interests of technology users in both court cases and in broader policy debates surrounding the application of law in the digital age." The EFF did not identify any specific interest in this case beyond these broad proclamations in its Statement of Interest section in the proposed brief. Therefore, the second ground for filing as an *amicus* is also unavailable to the EFF.

**C.**     **The EFF Does Not Offer a Unique Perspective to This Court Beyond What the Parties are Able to Do**

The third and final ground on which it would be appropriate for the Court to accept an *amicus* submission is when the *amicus* has a unique perspective, or information, that can assist the court beyond what the parties are able to do. *Scheidler*, 223 F.3d at 617. EFF attorney Charles Mudd represents multiple parties in this very case. There is no reason why Mudd cannot

offer his perspective to the Court as an advocate for his clients.  The third ground for filing as an *amicus* is unavailable to the EFF

**D.     The EFF is Not a Friend of This Court**

The EFF has consistently demonstrated that is not a "friend of the Court" but rather a "friend" and advocate for anyone using digital technology to violate the rights of copyright owners.[3]  According to EFF's own website archiving filings in copyright infringement cases, it has attempted to file *amicus* briefs on behalf of copyright infringers for at least the past seven years.  *See* Electronic Frontier Foundation, RIAA v. The People Case Archive, http://w2.eff.org/IP/P2P/riaa_archive.php (last accessed Feb. 16, 2011).  EFF vilifies creative professionals who attempt to enforce their legal rights against Internet-based copyright infringers by using derogatory terms such as "copyright trolls"—in fact, EFF has an entire section of its website under that heading.

Further, a cursory overview of the EFF's submission reveals that it has withheld from this Court cases where courts found the joinder question to be premature at the outset of a case. *Arista Records LLC v. Does 1–19*, 551 F. Supp. 2d 1, 11 (D.D.C. 2008) ("[Joinder] inquiry is

---

[3] Jason Weinstein, Deputy Assistant Attorney General for the Department of Justice, recently testified before the House Committee investigating the need to set a national standard for data retention by the ISPs.  *Data Retention as a Tool for Investigating Internet Child Pornography And Other Internet Crimes: Hearing Before the Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. on the Judiciary*, 112th Cong. 63 (Jan. 25, 2011) [hereinafter *Hearings*] (statement of Jason Weinstein, Deputy Assistant Att'y Gen., United States Department of Justice, Washington, DC), *available at* http://judiciary.house.gov/ hearings/printers/ 112th/112-3_63873.PDF (last visited Mar. 20, 2011).  Weinstein described a guide published by the EFF entitled "Best Practices for Online Service Providers" as "the the best argument for Congress to intervene" than anything he could say.  *Id.*  In this guide, EFF "provides guidance about how to minimize what they referred to as 'the challenges of law enforcement compliance.'  It calls upon providers to obscure, delete as much data as possible.  It advises providers to use secure deletion utilities to scrub the hard drives so that the logs cannot be obtained."  *Id.* Naturally, copyright infringement prosecution is not possible without the data the EFF would have destroyed.

premature without first knowing Defendants' identities and the actual facts and circumstances associated with Defendants' conduct."); *Sony Music Entm't, Inc. v. Does 1–40*, 326 F. Supp. 2d 556, 568 (S.D.N.Y. 2004); *Arista Records LLC v. Does 1–16*, Civ. No. 1:08-CV-765 (GTS/RFT), 2009 WL 414060, at *8 (N.D.N.Y. Feb. 18, 2009). These courts reasoned that defendants may prefer a joint defense, and should any prejudice or conflict arise, a court can address the matter at that time. Additionally, delaying severance until the facts and circumstances warrant an examination of severance would not prejudice the defendants because they could avail themselves of such a request then.

Moreover, each of the joinder decisions offered up by the EFF rely on the same three underlying decisions: *LaFace Records, LLC v. Does 1–38*, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008); *Interscope Records v. Does 1–25*, 2004 U.S. Dist. Lexis 27782 (M.D. Fla. Apr. 1, 2004); *BMG Music v. Does 1–4*, 2006 U.S. Dist. LEXIS 53237, *5–6 (N.D. Cal. July 31, 2006). Technological evolution has made these decisions inapplicable today. In a recent order from the Northern District of Illinois, cited by the EFF, the court noted that BitTorrent is also a peer-to-peer sharing protocol like the "online media distribution system" cited in *LaFace Records*, and therefore the same logic applies in the case at bar and the defendants should be severed. *Lightspeed v. Does 1–1,000*, No. 10-cv-05604, ECF No. 53 (N.D. Ill. Mar. 31, 2011) ("[T]he BitTorrent protocol is a peer-to-peer file sharing system, which was at issue in the *LaFace Records* case."); *see also Millennium TGA v. Does 1–800*, No. 10-cv-05603, ECF No. 55 (N.D. Ill. Mar. 31, 2011) (decided by the same judge on the same day, and also citing *LaFace Records*). FastTrack, the peer-to-peer file transfer protocol which was at issue in the *LaFace–Interscope–BMG* troika, is fundamentally different from the BitTorrent protocol, and this Court should not apply logic based on outdated technology to decide today's case. Although horses

and cars are both methods of transportation, the laws that apply to one appropriately do not apply to the other.

FastTrack was an early peer-to-peer protocol utilized and made popular by a notorious digital piracy program called Grokster. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.* 545 U.S. 913, 621 (2005); *see also* Jessica Wood, *The Darknet: A Digital Copyright Revolution*, XVI Rich. J.L. & Tech. 14, 21–27 (2010), http://jolt.richmond.edu/v16i4/article14.pdf (discussing evolution of file-sharing protocols from centralized networks to "semi-distributed hybrid systems, such as the FastTrack protocol" to fully-distributed protocols, such as BitTorrent, which "make collaboration [among users] mandatory"). Despite its name, FastTrack was slow and inefficient. Unlike BitTorrent, which breaks up a file into small, easily shareable pieces, FastTrack operated using whole files. Unlike BitTorrent users, who can receive many pieces of a given file from hundreds of different users, FastTrack users could only download from one person at a time. Unlike BitTorrent users, who start uploading as soon as they receive any part of the file, FastTrack users had to wait until fully completing a download before they could begin uploading. Unlike the BitTorrent protocol, FastTrack severely limited the upload— and thus, distribution—capabilities of a user because it operated using whole files, not pieces.

The fundamental differences in the ways these protocols operate create fundamentally different legal liabilities. FastTrack never had swarms that required the cooperation and concerted action of many users. It only had individuals. Therefore, the plaintiffs in the *LaFace– Interscope–BMG* troika could only allege violations of the same law by using the same means. *See, e.g.*, Complaint for Copyright Infringement, ¶ 20, *LaFace Records*, No. 07-cv-00298, 2007 WL 4717470 (Aug. 8, 2007) ("[E]ach Defendant is alleged to have committed violations of the same law (e.g., copyright law), by committing the same acts (e.g., the downloading and

distribution of copyrighted sound recordings owned by Plaintiffs), and by using the same means (e.g., a file-sharing network) that each Defendant accessed via the same ISP.") It is no wonder that the courts in these cases found these allegations to be insufficient for joinder: the alleged connection between the defendants is about as robust as the allegation that bank thieves robbed the same bank at different times, but used the same get-away route.

Here, Defendants used a different protocol and the Plaintiff has alleged greater ties among the defendants. Because of the distributed nature of the BitTorrent protocol, sharing files via this method involves far more than "merely committing the exact same type of violation in the same way" or using the same ISP as was alleged in the troika. By its very nature, trading pieces of a file in the BitTorrent swarm to assemble just one finished copy requires many people acting in concert, and often involves hundreds, if not thousands of individuals. Therefore, joinder is proper and can be demonstrated through cataloguing Defendants' interactions with each other.

None of the decisions cited by the EFF analyze how the new file-sharing method affects the issues of legal liability, instead, they all rely decisions made inapplicable by the advances in technology. *Lightspeed*, No. 10-cv-05604, ECF No. 53 (citing *LaFace Records*, 2008 WL 544992, at *2); *Millennium TGA*, No. 10-cv-05603, ECF No. 55 (same); *West Coast Productions v. Does 1–2,010*, No. 10-CV-93, at *2–3, ECF No. 44 (N.D. W.Va. Dec. 16, 2010) (citing *LaFace Records*, 2008 WL 544992, at *2; *BMG Music*, 2006 U.S. Dist. LEXIS 53237, *5–6; *Interscope Records*, 2004 U.S. Dist. LEXIS 27782, at *19); *LFP Internet Group, LLC v. Does 2–3,120*, No. 10-cv-2095-F, *passim*, ECF No. 45 (N.D. Tex. Feb. 10, 2011) (discussing BitTorrent but citing *West Coast Productions*, *BMG Music*, and *LaFace Records*).

Finally, in its "related authority" the EFF withholds from this Court perhaps the most relevant decision of all. In a well-reasoned opinion from a case involving virtually identical facts, the same file transfer protocol and the same *amicus*, a federal court rejected every argument made by the EFF and found joinder appropriate and in the interests of judicial economy. (Memorandum Opinion, *Call of the Wild Movie, LLC v. Does 1–1,062*, No. 10-cv-455, 2011 WL 996786 (Mar. 22, 2011), ECF. No. 40) [hereinafter *Call of the Wild Order*]. This 42 page opinion addressing and resolving issues in three pending copyright infringement cases[4] involving anonymous downloaders is the most thoughtful and detailed analysis of the issues raised by the *amicus* and parties to date. Unlike the decisions enclosed by the EFF in its *amicus* filing, where the issues are considered and disposed of in matter of lines, paragraphs at the most, the court in *Call of the Wild* dedicated seven pages to the analysis of the joinder issue alone. (*Id.* 6–13.) It held that plaintiffs satisfied the standard for permissive joinder because plaintiffs' claims against defendants were logically related; because "the putative defendants are not prejudiced but likely benefited by joinder," whereas "severance would debilitate the plaintiffs' efforts to protect their copyrighted materials and seek redress." (*Id.* at 13.) The court also held that joinder promotes judicial efficiency and "severing the putative defendants is no solution to ease the administrative burden." (*Id.* 12–13.)

Specifically, the court found that it is the nature of BitTorrent protocol that makes the plaintiff's claims against the defendants logically related, thus satisfying the legal standard for permissive joinder. (*Call of the Wild Order*, at 10.) The court noted that each putative defendant is a possible source for the plaintiff's copyrighted works, and "may be responsible for

---

[4] In addition to the Call of the Wild Movie, this decision also addresses and resolves issues raised in *Maverick Entm't Group, Inc. v. Does 1–4,350*, No. 10-cv-569, and *Donkeyball Movie, LLC v. Does*, 1–117, No. 10-cv-1520.

distributing" the same "to the other putative defendants, who are also using the same file-sharing protocol to copy the identical copyrighted material." (*Id.*) It was not possible for "each putative defendant to be a source" using the FastTrack protocol when *LaFace Records–Interscope–BMG* was decided. But by using the BitTorrent protocol, each putative defendant in a swarm is engaged in a series of exchanges with other swarm participants and putative defendants that squarely fit the definition of "transaction or occurrences" necessary for permissive joinder.

The court in *Call of the Wild* recognized that the *LaFace Records–Interscope–BMG* troika was not relevant in the context of the BitTorrent protocol. This Court should do the same.

## CONCLUSION

The Court should not grace EFF with permission to usurp the litigation prerogative of the defendants and should instead exercise its judicial discretion to deny EFF's motion for leave to file supplemental authority as an *amicus curiae*. If Mudd wishes to bring cases before the Court, he can do so on behalf of his clients at an appropriate time and subject to the same briefing standards applied to advocates.

 

Respectfully submitted,

FUTURE BLUE, INC.

**DATED:** April 11, 2011

By:    /s/ John Steele_____
John Steele (Bar No. 6292158)
Steele Hansmeier PLLC
161 N. Clark St.
Suite 4700
Chicago, IL 60601
312-880-9160;   Fax 312-893-5677
jlsteele@wefightpiracy.com
*Attorney for Plaintiff*

-11-

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on April 11, 2011, all counsel of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's CM/ECF system, in compliance with Local Rule 5.2(a).

<u>s/ John Steele</u>
JOHN STEELE